**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

FILED
JAMES J. WALDRON, CLERK
AUG 13 2015
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

Andrew B. Altenburg, Jr.
U.S. BANKRUPTCY JUDGE

(856) 361-2320

August 13, 2015

Paul R. Melletz, Esquire
Begelman, Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034

Andrew G. Greenberg, Esquire
East Pointe Building
15 South Main Street
Marlboro, NJ 07746

Daniel L. Reinganum, Esquire
John Hargrave & Associates
117 Clements Bridge Road
Barrington, New Jersey 08007

RE:   In re Eileen M. Enright
      Bankr. Case No. 15-14736-ABA

Dear Gentlemen:

This matter was originally brought before the court on June 1, 2015 by a Motion for Relief from Stay re: Set-off in Family Court (Doc. No. 14, hereinafter "Motion"), filed by Daniel J. Hernandez. Mr. Hernandez is the former husband of the debtor, Eileen M. Enright. He sought relief to return to Family Court for that court to adjust his monthly support payments in light of a credit awarded him for past overpayments, arguing a right to setoff. Ms. Enright opposed the relief (Doc. No. 21, hereinafter "Opposition"), arguing that setoff is not indicated because, Mr. Hernandez being current on his support payments, holds no mutual debt to offset against the credit owed by Ms. Enright. In a response (Doc. No. 22, hereinafter "Response"), Mr. Hernandez added a theory of recoupment.[1] After the hearing, the court afforded the parties the opportunity to discuss a resolution of the matter. It was reported to the court that the parties were unable to resolve the matter. As a result, the court makes this decision based upon the reasons set forth on the record and further set forth below.

---

[1] *See* Fed. R. Civ. P. 15(a)(1)(B). While Rule 15, Amended and Supplemental Pleadings, is not included in the Part VII rules incorporated into contested matters by Federal Rule of Bankruptcy Procedure 9014, it may be incorporated if the court so directs. Fed. R. Civ. P. 9014(c). "Amendments may relate to either parties or claims and may serve such purposes as to add claims or defenses, to properly name or identify parties, and to add, substitute or drop parties or clarify jurisdiction." 3-15 Moore's Federal Practice – Civil, § 15.02[1]. As Ms. Enright has not objected to the added, alternative claim, this court will allow it.

### Jurisdiction

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### Finding of Facts

In connection with their divorce prepetition, the parties entered into a settlement agreement, dated June 21, 2006, that concerned among other things, payment of spousal and child support. See exhibit to Response. The agreement permitted Mr. Hernandez to seek a downward modification of his spousal and child support obligations after five years. *Id.*, at ¶ (b). It also provided for him to pay child support in accordance with a March 24, 2006 *pendente lite* order until refinance or sale of the former marital home, and then $391 per week for one of the children. *Id.*, at ¶ (e). Presumably, an amount to be paid for the parties' other two minor children was covered by the March 24th order.

On June 21, 2013, the state court judge held that Mr. Hernandez had overpaid his child support due to continuing to pay for one child despite that child having become emancipated some years earlier. Motion, certification at ¶ 3; Opposition, certification at ¶ 5. The judge awarded Mr. Hernandez $22,792 as reimbursement of the overpaid child support, stating:

> Therefore $22,792.00 shall be credited to Defendant's account. The current support Order requires Defendant to pay $575.00 per week in permanent alimony. Defendant's alimony shall be garnished at $500.00 per week until the credit is paid off effective May 23, 2013. Plaintiff is required to report the full amount ($575.00) as alimony as the credit represents reimbursement for overpayment.

Motion, ex. A to certification, p. 5.

On June 27, 2014, the state court judge entered another order, reducing Mr. Hernandez's alimony to $169 per week, effective May 9, 2014, in accordance with the parties' settlement agreement that had allowed Mr. Hernandez to seek a downward adjustment after five years. Motion, ex. B to certification, at p. 2. How to apply Mr. Hernandez's child support credit to this reduced alimony obligation was dealt with by the court as follows:

> Defendant's request for an Order correctly determining the credit due defendant for overpaid child support per previous orders of the court and considering a moratorium on alimony until the entire credit is eliminated if alimony continues in a reduced amount; or otherwise directing how the credit should be reduced if alimony is terminated is **DENIED without prejudice.** The parties are **ORDERED** to attend economic mediation with Jennifer C. Apell, Esquire to resolve the outstanding issues of overpaid child support

and enforcement of the last counsel fee award as applied to the new alimony obligation. Mediation is to be scheduled within 60 days from the issuance of this Order. . . . Should mediation fail to resolve the outstanding issues, the parties, through counsel, will confer and may submit letter briefs outlining their respected positions within 14 days from the failed mediation.

*Id.*, at p. 3.

According to Mr. Hernandez, the parties attended mediation but were not able to negotiate a solution to the credit. Motion, certification at ¶ 10.[2] Thus he moved in this court for relief from the bankruptcy stay to resolve the issue in the state court.

As noted above, Mr. Hernandez first argued that he had a right of setoff under section 553 of the Bankruptcy Code. Ms. Enright responded that there is no mutual prepetition debt to offset against the credit.[3] Mr. Hernandez then argued that the debts might be offset under the common law theory of recoupment, as debts arising from the same transaction.

## Discussion

### A. Section 362(b) does not apply to allow the modification of an order for a domestic support obligation

The court first notes that relief from stay is necessary in this case, as section 362(b)(2)(A)(ii), which provides that the stay does not apply to "the commencement or continuation of a civil action or proceeding for the establishment or modification of an order for domestic support obligations," itself does not apply here. *See* 11 U.S.C. § 362(b)(2)(A)(ii).

In general, courts conclude that a reimbursement obligation is not a domestic support obligation ("DSO"), because the reimbursement is not support to the overpaying spouse. *See In re Knott*, 482 B.R. 852, 856 (Bankr. N.D. Ga. 2012) (collecting cases); *In re Vanhook*, 426 B.R. 296, 301 (Bankr. N.D. Ill. 2010) ("The ensuing debt owed to the Creditor as the result of the wrongfully paid child support should not retain the same character as when the Creditor originally and mistakenly paid the monies to the Debtor.") (and citing other cases). *Collier* states that "most courts" hold that an overpayment of a DSO from one spouse to another is not itself a DSO. 2-101 *Collier on Bankruptcy*, ¶ 101.14A (Matthew Bender 2015).

The court in *In re Taylor*, 737 F.3d 670, 679 (10th Cir. 2013), held that a debtor's obligation to repay a former spouse for a support overpayment was not itself a support payment for purposes of section 101(14), which defines a domestic support obligation ("DSO"), and section 523(a)(5), concerning nondischargeability of a DSO. However, the debt was

---

[2] Ms. Enright filed her chapter 13 case on March 18, 2015. Neither party offered an explanation for the failure to resolve this issue in the nine months since the July 1, 2014 order. However, as the parties did not indicate when mediation concluded, and Ms. Enright did not raise the doctrine of laches, I will assume that the time for the state court to resolve the issue has not run.

[3] The court notes that Ms. Enright did not disclose this credit on Schedule F as a debt owed to Mr. Hernandez. But Mr. Hernandez filed a claim, docketed at #4 on the Claims Register, on May 8, 2015, amended on August 6, 2015.

nondischargeable in the chapter 7 case pursuant to section 523(a)(15) as a debt "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record[.]" *Id.*, at 680. *But see In re Schauer*, 391 B.R. 430, 434 (Bankr. E.D. Wis. 2008) (concluding without discussion that overpayment to governmental unit of child care support was nondischargeable under section 523(a)(5) as a DSO, as "in the nature of assistance provided by a governmental unit to a child of the debtor") (J. McGarity).

### B. Setoff is not available

Mr. Hernandez argues that relief from stay is proper to allow him to pursue setoff of the support credit against his alimony obligation. Section 553(a) provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a).

[I]n order to maintain a right of setoff under section 553, the party asserting the right must show:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.
2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
3. The debt and the claim are mutual obligations.

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3d Cir. 2000). *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. at 18 (Regarding mutuality, stating requiring such "thereby avoid[s] "the absurdity of making A pay B when B owes A.") (internal quotation omitted); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002). The creditor must establish these elements by a preponderance of the evidence. *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 59 (Bankr. E.D. Va. 2002).

That a debt is dischargeable does not prevent it from being offset by a creditor's mutual claim. *In re Conti*, 50 B.R. 142, 149 (Bankr. E.D. Va. 1985).

Here, while Mr. Hernandez has a claim against Ms. Enright, he has no debt that arose prior to the commencement of the bankruptcy case owed to her against which to offset. His obligation to pay her support was current at the time of filing the petition, and otherwise is only a future, or postpetition, obligation. As stated in *In re Ruiz*, 146 B.R. 877, 879 (Bankr. S.D. Fla. 1992), "[s]ection 553 only permits setoff of mutual pre-petition debts. It does not permit a

creditor to collect a *pre-petition* debt by withholding payment of a *post-petition* debt owed to the debtor." This is exactly what Mr. Hernandez wants the state court to allow him to do.

Accordingly, relief from the stay to pursue setoff of Mr. Hernandez's future support obligations against the prepetition judgment of overpayment is not permitted.

### C. Recoupment might apply

Mr. Hernandez also argued that vacating the stay is appropriate for him to seek relief in the state court by application of the doctrine of recoupment. Mr. Hernandez argues that his future support obligation and his right to a credit arise out of the same transaction, i.e., the state court's June 27th order, reducing his alimony obligation and providing for determination of a reduction of his credit.

The Third Circuit explained the difference between setoff and recoupment many years ago.

> In bankruptcy, however, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. *See* 11 U.S.C. § 506(a). Setoff is limited, however, by the provisions of 11 U.S.C. § 553. Among those limitations is that pre-petition claims against the debtor cannot be setoff against post-petition debts to the debtor. Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable. In bankruptcy, the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract.

*Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) (citations and footnotes omitted). *See also In re Prochnow*, 474 B.R. 607, 616 (Bankr. C.D. Ill. 2011), *aff'd*, 467 B.R. 656 (C.D. Ill. 2012) ("Further, unlike setoff, recoupment does not require that both of the competing claims arose pre-petition.").

The Third Circuit later refined the "same transaction" standard for recoupment:

> For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the 'same transaction.'" *Id.* Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the

context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed.

*In re University Medical Center*, 973 F.2d 1065, 1081 (3d Cir. 1992).

In *In re Rooster, Inc.*, 127 B.R. 560, 567 (Bankr. E.D. Pa. 1991), the court held that that the claim of a buyer to a deposit for goods it sought to purchase and the claim of the seller for damages due to the buyer's breach of contract arose from the same transaction for purposes of recoupment. *Id.*, at 568. The *Rooster* court specified that the bankruptcy filing did not alter the result that would occur outside of bankruptcy, and it did not matter whether the breach occurred pre- or postpetition, or whether the contract was executory or not. *Id.*, at 568.

Other courts considering whether overpayments arose out of the same transaction address whether the claims arose out of the same contract, *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984); whether the transactions occurred in the same year, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1081 (3d Cir. 1992) (holding that overpayments made in 1985 could not be recouped against payments due for Medicare services provided in 1988); or whether a statute provided for recoupment, *In re Stratman*, 217 B.R. 250, 253 (Bankr. S.D. Ill. 1998). *See also In re Delicruz*, 300 B.R. 669, 680 (Bankr. E.D. Mich. 2003) ("Several courts have found that recovering an overpayment of disability benefits from future benefits falls within the scope of recoupment.").

This court did not find any cases discussing recoupment of spousal or child support overpayments. Whether the obligations here arise from the same contract is difficult to determine: The court sees two obvious, countering arguments: (1) they do not arise from the same transaction because one obligation concerns child support and the other concerns alimony; or (2) they arise from the same transaction because the obligations arise from the same court order, and the state court intended for the child support credit to be offset by a deduction in future alimony payments.

The best exercise of discretion then is for this court to lift the stay for the parties to return to state court for the sole purpose of requesting that judge there decide whether recoupment applies. The state court judge is of course most familiar with its own proceedings and the intention behind its orders, and can determine whether both debts arise out of a single integrated transaction such that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Thus it is best suited to determine this issue. As recoupment, if proper, will not run afoul of the bankruptcy stay, a determination in Ms. Enright and Mr. Hernandez's case there will be honored here.

### D. If recoupment not applicable, then Mr. Hernandez may not otherwise offset overpayment, as is a dischargeable debt

If the state court judge determines that recoupment is not appropriate, then upon completion of her chapter 13 plan,[4] Ms. Enright will be entitled to a discharge of the credit claim pursuant to section 1328(a). The court warns that Mr. Hernandez may not then obtain any alternative offset of the debt, as to do so would violate the discharge injunction, as provided in section 524(a)(2):

> (a) A discharge in a case under this title—(2) operates as an injunction against the commencement or continuation of an action, the employment of process, **or an act, to collect, recover or offset** any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2) (emphasis added). See *In re McGowan*, No. 10-12944 MBK, 2011 WL 2415534, at *2 (Bankr. D.N.J. June 15, 2011) ("Additionally, the equitable distribution obligation owing to Mr. McGowan is accounted for in the Debtor's Chapter 13 plan and will be discharged, so long as the Debtor completes payment on the plan.").

The court reserves the right to further supplement its findings of fact and conclusions of law.

An executed order is enclosed.

Very truly yours,

Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Encl

---

[4] As of August 7, 2015, Ms. Enright is in arrears on her proposed plan in the amount of $244, in the fifth month of the plan.